**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**JOSEPH P. PLATT,**                          **CASE NO. 2:06-cv-580**
                                              **JUDGE GRAHAM**
        **Petitioner,**                        **MAGISTRATE JUDGE KEMP**

**v.**

**MICHAEL SHEETS, Warden,**

        **Respondent.**

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant

to 28 U.S.C. §2254.  This matter is before the Court on the instant petition, respondent's return of

writ, petitioner's traverse, and the exhibits of the parties.  For the reasons that follow, the Magistrate

Judge **RECOMMENDS** that this action be **DISMISSED**.

## I.  FACTS AND PROCEDURAL HISTORY

According to the state's evidence, defendant and Daniel Cole had a
relationship and Cole periodically stayed at defendant's house. At
some point in their relationship, Cole began to steal items from
defendant, which Cole apparently later sold.

Around March 1997, defendant and another person, "Tony," charged
into Cole's sister's house with guns drawn, looking for Cole.
Defendant sought Cole because Cole, along with another person,
"Richard," had stolen items from him. Defendant and "Tony" chased
Cole and "Richard" upstairs. Noises were later heard from upstairs.
Thereafter, Cole appeared with a bloodied nose and Cole and
"Richard" left with defendant and "Tony." Upon leaving the house,
defendant told Cole "that if he ever stole off of him again he would
shoot him in the back of the head after they beat him up and throw
him in the trash bag and throw him in the trash where he belonged."
FN1 When Cole returned to his sister's house later that same evening,
he had a black eye and a bloodied lip. His nose was also still bloodied.

1

FN1. Depo. of Krista Stumbaugh, at 13. (Videotaped deposition of Krista Stumbaugh was played at trial due to Stumbaugh's unavailability to testify at trial.)

In early 1997, defendant, who at that time was a "[t]all, bigger guy" with "curly hair, some facial hair, beard, glasses," FN2 on several occasions also solicited others to physically attack Cole,FN3 defendant's then boyfriend, in retaliation for Cole's thievery against defendant; in exchange, defendant offered $500 as consideration. Ultimately, Aaron Swank and Michael Gordon accepted defendant's offer.

FN2. Tr. Vol. ll, at 208, 232.

FN3. *Id*. at 206.

Thereafter, in the early morning of April 30, 1997, after Cole and a friend had been partying at a tavern, Cole entered a car in front of the tavern with a man named "Joe," who was later identified as defendant. When Cole entered the car, defendant appeared angry. Cole told his friend with whom he had been partying not to worry and that he would meet the friend in an hour at a designated location. Cole's friend waited, but Cole never arrived at the arranged location.

Around that same time, during the late evening of April 29, 1997, or the early morning of April 30, 1997, Aaron Swank, Michael Gordon, Stephanie Coleman, Keaton Payne, and Dawn Barrowman were at Swank's house on Heyl Avenue in Columbus, Ohio. At the time, Coleman and Barrowman were partying; this partying included alcohol and drug use. While Coleman and Barrowman were at Swank's house, a "heavy-set white guy" FN4 came to the front door. The "heavy-set white guy" entered the house, met with Swank and possibly with Gordon and Payne. Later, "the heavy-set white guy," Swank, Gordon, and Payne left the house. A few minutes later, the "heavy-set white guy," along with Swank, Gordon, and Payne forcibly ushered a "skinny white male" FN5 into Swank's house and took this male into the basement. According to Coleman, at the time that the "skinny white male" was forced into Swank's house, Swank held a gun to "the skinny white male's" head and pulled "the skinny white male's" shirt over his head to conceal his identity. According to this witness, at the time the "skinny white male" was forced into

2

the house, his eyes were as big as 50-cent pieces." FN6 Sporadic screams later were heard from the basement for several hours.

FN4. *Id.* at 144.

FN5. *Id*. at 268.

FN6. *Id.* at 269.

According to Barrowman, at one point, "the heavy-set white guy" came upstairs, retrieved something, and returned to the basement. Later, Payne came upstairs and left the house, appearing scared or frightened. The "heavy-set white guy" also came upstairs and left the house. Following the departure of Payne and the "heavy-set white guy," sporadic screams continued to be heard from the basement.

At some point, Gordon came upstairs and asked Coleman to clean up blood in the basement. Coleman refused. Gordon then asked Barrowman to clean up the blood in the basement. Barrowman also refused. Gordon then returned to the basement.

Eventually, Gordon and Swank came upstairs, and later Gordon, Swank, Coleman, and Barrowman drifted off to sleep.

On the afternoon of April 30, 1997, refuse was collected in Swank's neighborhood. While the operator of the refuse truck emptied his load at a refuse transfer station, an employee of the refuse transfer station discovered Cole's body among trash that was being unloaded. An autopsy revealed that Cole had sustained a fatal gunshot wound to the head and blunt trauma to his face, trunk, and extremities.

By indictment filed August 20, 2002, defendant was charged with felonious assault, kidnapping, and two counts of involuntary manslaughter. Each count contained a firearm specification. Defendant pled not guilty to all counts. A jury trial was later held.

The jury found defendant guilty of all counts, but it acquitted him of all firearm specifications. By judgment entry filed October 21, 2003, the trial court convicted defendant pursuant to the jury verdict and sentenced him to an aggregate sentence of 15 years of imprisonment.

*State v. Platt*, 2005 WL 407574 (Ohio App. 10 Dist. Feb. 22, 2005), Exhibit K to Return of Writ.

3

Represented by new counsel, petitioner raised the following assignments of error:

ASSIGNMENT OF ERROR NUMBER ONE

THE TRIAL COURT ERRED WHEN IT ENTERED JUDGMENT AGAINST THE DEFENDANT WHEN THE EVIDENCE PRESENTED ON BEHALF OF THE STATE WAS INSUFFICIENT TO SUSTAIN THE FINDINGS BY PROOF BEYOND A REASONABLE DOUBT AND THE JUDGMENT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED WITH RESPECT TO ALL OF THE COUNTS IN THE INDICTMENT.

ASSIGNMENT OF ERROR NUMBER TWO

THE TRIAL COURT ERRED WHEN IT ENTERED JUDGMENT AGAINST THE DEFENDANT WHEN THE EVIDENCE PRESENTED ON BEHALF OF THE STATE WAS INSUFFICIENT TO ESTABLISH THAT THE ACTS OF THE DEFENDANT WERE THE PROXIMATE CAUSE OF DECEDENT'S DEATH AND THE JUDGMENT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN THIS REGARD.

ASSIGNMENT OF ERROR NUMBER THREE

THE TRIAL COURT ERRED WHEN IT ALLOWED THE STATE TO INTRODUCE INADMISSIBLE OTHER ACT EVIDENCE AGAINST THE DEFENDANT.

ASSIGNMENT OF ERROR NUMBER FOUR

THE TRIAL COURT ERRED WHEN IT ALLOWED PHOTOGRAPHS TO BE ADMITTED THAT WERE OF NO PROBATIVE VALUE AND WERE PREJUDICIAL AND INFLAMMATORY.

ASSIGNMENT OF ERROR NUMBER FIVE

THE TRIAL COURT ERRED WHEN IT GAVE IMPROPER INSTRUCTIONS TO THE JURY ON THE LAW OF COMPLICITY OVER THE OBJECTION OF DEFENDANT.

ASSIGNMENT OF ERROR NUMBER SIX

THE TRIAL COURT ERRED WHEN IT REFUSED TO ISSUE AN

4

> ORDER FOR THE RETURN OF THE IMPRISONED CO-DEFENDANTS TO FRANKLIN COUNTY AS WITNESSES FOR THE DEFENDANT AND FURTHER ERRED WHEN IT HELD THAT A LETTER WRITTEN BY A CO-DEFENDANT COULD NOT BE ADMITTED INTO EVIDENCE.

*Id*.; Exhibit I to Return of Writ.  On February 22, 2005, the appellate court affirmed the trial court's

judgment.  Exhibits K and L to Return of Writ.  Still represented by counsel, petitioner filed a timely

appeal to the Ohio Supreme Court.  He raised the following propositions of law:

> 1.  Under federal and state constitutional provisions regarding the due process of law, a person is not guilty of being the proximate cause of the death of another based upon an independent act of homicide committed by an accomplice when there is no evidence of any prior conspiracy to commit the homicide when the person never did any overt act with the intent to cause the death of another.

> 2.  The defendant is deprived of his federal constitutional right to a fair trial and due process of law are violated when the State is allowed to introduce inadmissible other act evidence against the defendant and to admit prejudicial and inflammatory photographs which were of no probative value.

> 3.  The defendant is deprived of his federal constitutional right to a fair trial and due process of law are violated when the trial court gives  erroneous instructions to the jury on the law of complicity.

> 4.  The accused is deprived of his constitutional right to present witness and evidence on his behalf when the trial court refused to issue an order for the return of the imprisoned co-defendants to Franklin County as witnesses for the defendant and when it held that a letter written by a co-defendant could not be admitted into evidence.

Exhibit K to Return of Writ.  On July 13, 2005, the Ohio Supreme Court denied leave to appeal and

dismissed the appeal as not involving any substantial constitutional question.  Exhibit O to Return

of Writ.

On July 12, 2006, petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254.  He alleges that he is in the custody of the respondent in violation of the Constitution of the United States based upon the following grounds:

1.  Violation of 5th and 14th Amendment rights to due process requiring sufficient evidence to sustain a conviction.

There was insufficient evidence to prove petitioner was guilty of voluntary manslaughter, felonious assault or kidnapping.  There was no evidence to prove that petitioner aided or abetted in the death of the victim, nor was there sufficient evidence to show that he shared the same intent as the killers as it related to felonious assault and kidnapping.

2.  Violation of right to a fair trial under the 5th and 15th Amendments to the U.S. Constitution.

The trial court allowed the introduction of inadmissible other acts evidence.  The trial court allowed the introduction of prejudicial and inflammatory photographs of the decedent which were of no probative value.  Other acts were alleged drug use and a fight with decedent.  The photos depicted decedent covered in garbage and naked, with genitalia exposed at coroner's office.

3.  Violation of right to a fair trial under the 5th and 14th Amendments to the U.S. Constitution.

The trial court gave an erroneous instruction to the jury on the law of complicity.

4.  Violation of 6th Amendment right to compulsory process.

Petitioner subpoenaed two witnesses in his defense.  The trial judge did not issue and order to bring the two witnesses, who were also

6

inmates in an Ohio jail or prison into court so petitioner could present a defense using one or both witnesses.

It is the position of the respondent that this action must be dismissed as time-barred under 28 U.S.C. §2244(d) because petitioner did not sign the petition within the applicable one year statute of limitations period.  Alternatively, respondent contends that petitioner's claims are procedurally defaulted or without merit.

On June 7, 2007, the Court granted petitioner's motion to expand the record.  *See* Doc. Nos. 20, 22.  On June 12, 2007, and June 13, 2007, respondent supplemented the record with the documents required.  *See* Doc. Nos. 24-27.

## II.  STATUTE OF LIMITATIONS

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which became effective on April 24, 1996, imposes a one-year statute of limitations on the filing of habeas corpus petitions.  28 U.S.C. §2244(d) provides:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

7

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Petitioner's conviction became final on October 11, 2005, ninety days after the Ohio Supreme Court's July 11, 2005, dismissal of his direct appeal, when the time period expired to file a petition for a writ of *certiorari* to the United States Supreme Court. *Bronaugh v. Ohio*, 235 F.3d 280, 286 (6th Cir. 2001). The instant petition was filed on July 12, 2006; however, according to respondent, because the one year statute of limitations has now expired, and because the petition was signed by petitioner's attorney on petitioner's behalf, but not by the petitioner, this action nonetheless is time-barred. *Return of Writ*, at 8-10. This Court is not persuaded by respondent's argument.

The habeas corpus statute and the Rules Governing Section 2254 Cases both contain a provision requiring a habeas corpus applicant to sign the petition; but both also contain a provision allowing someone acting on behalf of the applicant to sign the petition instead. 28 U.S.C. §2242 provides in relevant part:

> Application for a writ of habeas corpus shall be in writing signed and verified by the person for whose relief it is intended or by someone acting in his behalf.

Similarly, Rule 2(c) of the Rules Governing Section 2254 Cases provides in relevant part:

> The petition shall be in substantially the form annexed to these rules, except that any district court may by local rule require that petitions filed with it shall be in a form prescribed by the local rule. *** The

8

> petition shall be typewritten or legibly handwritten and shall be
> signed under penalty of perjury by the petitioner.

The Advisory Committee Notes regarding Rule 2(c) state:

> Both subdivision (c) and the annexed form require a legibly
> handwritten or typewritten petition.  As required by 28 U.S.C. §2242,
> the petition must be signed and sworn to by the petitioner (or
> someone acting in his behalf).

The absence of Petitioner Platt's signature on the habeas corpus petition alone is not fatal to this Court's jurisdiction.  *See Lucky v. Calderon*, 86 F.3d 923,  925 (9th Cir. 1996); *Hendricks v. Vasquez*, 908 F.2d 490, 491 (9th Cir. 1990); *see also Benner v. Coyle*, No. 99-3570 (6th Cir. (Ohio) Nov. 1, 1999).  Additionally, other courts have concluded that a habeas corpus petition signed by counsel for the petitioner, instead of by the petitioner himself, is proper.  *See Lucky v. Calderon, supra*, 86 F.3d at 925; *DeShields v. Snyder*, 829 F.Supp 676, 678 n.2 (D. Delaware 1993);*Deutscher v. Angelone*, 16 F.3d 981, 984 (9th Cir. 1994); *Benner v. Coyle, supra*.  *Whitmore v. Arkansas*, 495 U.S. 149 (1990), referred to by respondent, is not analogous to this case.  *Whitmore v. Arkansas, supra*, involves the standing of a "next of friend" who was attempting to intervene in a death penalty inmate's waiver of his right to appeal.  Such are not the circumstances here.  Further, respondent has not referred to, and this Court is unaware of any cases standing for the proposition that a timely filed habeas corpus petition, signed by counsel for the petitioner, is barred if not also signed by the petitioner himself before the statute of limitations expires.  Thus, this Court concludes that the instant habeas corpus petition is valid under Rule 2(c) of the Rules Governing Section 2254 Cases and 28 U.S.C. §2242, and is timely.

Respondent's motion to dismiss the instant habeas corpus petition as barred by the one-year

9

statute of limitations under 28 U.S.C. §2244(d) should therefore be **DENIED**.

### III.  PROCEDURAL DEFAULT

Respondent also raises the issue of procedural default.  In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required fairly to present those claims to the highest court of the state for consideration.  28 U.S.C. §2254(b), (c).  If he fails to do so, but still has an avenue open to him by which he may present the claims, his petition is subject to dismissal for failure to exhaust state remedies.  *Id.; Anderson v. Harless*, 459 U.S. 4, 6 (1982) *(per curiam)*; *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).  If, because of a procedural default, the petitioner can no longer present his claims to a state court, he has also waived them for purposes of federal habeas review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error.  *Murray v. Carrier*, 447 U.S. 478, 485 (1986); *Engle v. Issac*, 456 U.S. 107, 129 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is precluded by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule."  *Id.*  Second, the Court must determine whether the state courts actually enforced the state procedural sanction.  *Id.*  Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim.  *Id.*  Finally, if the Court has determined that a state

10

procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner is required to demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error. *Id*. This "cause and prejudice" analysis also applies to failure to raise or preserve issues for review at the appellate level. *Leroy v. Marshall,* 757 F.2d 94 (6th Cir. 1985).

In claim one, petitioner asserts that the evidence was constitutionally insufficient to sustain his convictions. It is the position of the respondent that petitioner has waived his right to raise this claim as it pertains to his convictions on felonious assault and kidnapping, because he failed to present such issue to the Ohio Supreme Court. Indeed, the record reflects that although petitioner asserted that the evidence was constitutionally insufficient to sustain all of his convictions before the Ohio Tenth District Court of Appeals, notwithstanding petitioner's arguments to the contrary, in his appeal to the Ohio Supreme Court, petitioner argued solely that the evidence was constitutionally insufficient to sustain his conviction on involuntary manslaughter. *See* Exhibit M to Return of Writ. Further, petitioner now may no longer present his claim of insufficiency of the evidence as it pertains to his convictions on felonious assault and kidnapping to the state courts under Ohio's doctrine of *res judicata See State v. Cole,* 2 Ohio St.3d 112 (1982); *State v. Ishmail*, 67 Ohio St.2d 16 (1981); *State v. Perry*, 10 Ohio St.2d 175 (1967). Such claims are barred due to petitioner's failure to present the claims to the Ohio Supreme Court. The state courts therefore were never given an opportunity to enforce the procedural rule at issue due to the nature of the procedural default. This Court deems the first and second parts of the *Maupin* test to have been met.

Petitioner can still obtain review of these claims on the merits if he demonstrates cause for his failure to follow the state procedural rules as well as actual prejudice from the constitutional

violations that he alleges.  Petitioner asserts the ineffective assistance of counsel as cause for his procedural default.  However, the ineffective assistance of counsel cannot constitute cause if there was no constitutional right to effective counsel in the proceeding in question; there is no right to counsel in direct appeal to the Ohio Supreme Court. *See Gulertekin v. Tinnelman-Cooper*, 340 F.3d 415, 425 (6th Cir.2003), citing *Coleman v. Thompson*, 501 U.S. 722, 752-53 (1991); *Pennsylvania v.. Finley*, 481 U.S. 551, 555 (1987)("[T]he right to counsel extends to the first appeal of right, and no further."); *Lopez v. Wilson*, 426 F.3d 339, 352 (6th Cir.2005).  Petitioner has failed to demonstrate cause for his procedural default.

Beyond the four-part *Maupin* analysis, this Court is required to consider whether this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Murray v. Carrier*, 477 U.S. at 491; *see also Sawyer v. Whitley*, 505 U.S. 333.  After review of the record, the Court does not deem this to be such a case.

## IV.  CLAIM ONE

In claim one, petitioner asserts that the evidence was constitutionally insufficient to sustain his conviction on involuntary manslaughter because

> there was no evidence to prove that petitioner aided and abetted in the death of the victim, nor was there sufficient evidence to show that he shared the same intent as the killers as it related to felonious assault and kidnapping.

*Petition*, at 6.  The state appellate court rejected this claim as follows:

> Defendant's first assignment of error asserts his convictions were against the manifest weight of the evidence and supported by legally insufficient evidence. Defendant's second assignment of error asserts there was insufficient evidence to support a finding that defendant's

12

acts constituted proximate cause of Cole's death and, absent sufficient evidence, the convictions for involuntary manslaughter were against the manifest weight of the evidence. Because defendant's first and second assignments of error are interrelated, we will jointly address them.

\*\*\*

[W]hen an appellant challenges his or her conviction as not supported by sufficient evidence, an appellate court construes the evidence in favor of the prosecution and determines whether such evidence permits any rational trier of fact to find the essential elements of the offense beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, superseded by constitutional amendment on other grounds in *State v. Smith* (1997), 80 Ohio St.3d 89, 684 N.E.2d 668; *Thompkins,* at 386, 678 N.E.2d 541; *Conley, supra*.

Here, defendant was convicted of one count of felonious assault, one count of kidnapping, and two counts of involuntary manslaughter based upon felonious assault and kidnapping respectively.

\*\*\*

R.C. 2923.03, defining complicity, in relevant part, provides:

(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:

(1) Solicit or procure another to commit the offense;

(2) Aid or abet another in committing the offense;

(3) Conspire with another to commit the offense in violation of section 2923.01 of the Revised Code;

(4) Cause an innocent or irresponsible person to commit the offense. \* \* \*

(F) Whoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender. A charge of complicity may be stated in terms of this section, or in terms of the principal offense.

See, also, State v. Ensman (1991), 77 Ohio App.3d 701, 703, 603 N.E.2d 303, dismissed, jurisdictional motion overruled (1992), 63 Ohio St.3d 1409, 585 N.E.2d 834 (observing that "charging a defendant in an indictment as if he were a principal will sustain proof that he acted as an aider and abettor of the principal"); State v. Ratkovich, Jefferson App. No. 02-JE-16, 2003-Ohio-7286, at ¶ 10 (Vukovich, J., dissenting) (observing that a court may instruct the jury on complicity where the evidence at trial reasonably supports a finding that a defendant was an aider or abettor even if defendant is charged in the indictment as a principal).

In State v. Brown, Franklin App. No. 03AP-130, 2004-Ohio-2990 (Bryant, J., concurring in part and dissenting in part), appeal not allowed, 103 Ohio St.3d 1481, 2004-Ohio-5405, this court observed:

" * * *[T]o support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal." State v. Johnson (2001), 93 Ohio St.3d 240, 245-246, 754 N.E.2d 796. * * * The defendant's intent may be inferred from the circumstances surrounding the crime. Id. at 246, 754 N.E.2d 796. * * * The defendant's " '[p]articipation in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed." ' Id. at 245, 754 N.E.2d 796, quoting State v. Pruett (1971), 28 Ohio App.2d 29, 34, 273 N.E.2d 884. * * *

Id. at ¶ 73, quoting Ratkovich, at ¶ 15.

Here, although there was conflicting evidence about details concerning defendant's solicitations in response to Cole's thievery as well as conflicting evidence about details of the events at Aaron Swank's house, based upon the totality of the evidence, we find a jury reasonably could infer that defendant was the "heavy-set white guy" who came to Aaron Swank's house on or around April 30, 1997. Moreover, viewing the evidence in its totality, we find a jury reasonably could infer that Cole was the "skinny white male" that was forced into Swank's house at gunpoint and that defendant was complicit in inflicting serious physical harm to him.

According to the state's evidence, defendant, whose appearance in 1997 was consistent with that of a "heavy-set white guy," picked up Cole outside a tavern in the early morning of April 30, 1997. At the

14

time that defendant picked up Cole outside the tavern, defendant appeared angry.[FN8] Approximately one month earlier, after chasing Cole with a gun drawn, defendant had warned Cole that if he stole from him again, he would be beaten, shot in the back of the head, and thrown in the trash. Furthermore, within close temporal proximity to the time when defendant picked up Cole outside a tavern on April 30, 1997, a "skinny white male" was taken to Swank's basement at gunpoint. From this same basement, periodic screams were heard for an extended period of time, and at some point requests were made to have blood cleaned up in the basement. Later, during the afternoon of April 30, 1997, Cole's body, with a fatal gunshot wound to the head, was found amid trash that was collected in Swank's neighborhood, and it was later determined that Cole received an antemortem injury to his nose.[FN9] Viewing this evidence in its totality, we find a jury reasonably could conclude that defendant was complicit in knowingly causing physical harm to Cole that carried a substantial risk of death.

FN8. Tr. Vol. I, at 100.

FN9. Tr. Vol. III, at 330-331.

In *State v. Raver,* Franklin App. No. 02AP-604, 2003-Ohio-958, this court stated:

A defendant will not be entitled to reversal on manifest weight or insufficient evidence grounds merely because inconsistent testimony was heard at trial. "While the jury may take note of the inconsistencies and resolve or discount them accordingly, see [ *State v.] DeHass* [1967, 10 Ohio St.2d 230], such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Nivens* (May 28, 1996), Franklin App. No. 95AP-1236. A jury, as finder of fact, may believe all, part, or none of a witness's testimony. *State v. Antill* (1964), 176 Ohio St. 61, 67, 197 N.E.2d 548. * * *
*Id.* at ¶ 21.

***

Former R.C. 2903.04,[FN10] defining involuntary manslaughter, in relevant part, provided:

FN10. Since the death of Cole in April 1997, R.C. 2903.04 has been

15

amended twice. *See* Am.Sub.S.B. No. 107, effective March 23, 2000; Am . Sub.S.B. No. 123, effective January 1, 2004.

(A) No person shall cause the death of another or the unlawful termination of another's pregnancy as a proximate result of the offender's committing or attempting to commit a felony.

* * *

(C) Whoever violates this section is guilty of involuntary manslaughter. Violation of division (A) of this section is a felony of the first degree. * * *

As discussed above, we have already concluded that defendant's felony convictions for felonious assault and kidnapping were supported by legally sufficient evidence and were not against the manifest weight of the evidence. Defendant contends, however, that the evidence was insufficient to establish that defendant's acts were the proximate cause of Cole's death and, absent sufficient evidence, defendant's convictions for involuntary manslaughter were against the manifest weight of the evidence.

In *State v. Losey* (1985), 23 Ohio App.3d 93, 95, 491 N.E.2d 379, construing former R.C. 2903.04, this court stated that for purposes of determining culpability for involuntary manslaughter, " 'proximate result' bears a resemblance to the concept of 'proximate cause' in that defendant will be held responsible for those foreseeable consequences which are known to be, or should be known to be, within the scope of the risk created by his conduct."

The issue thus resolves to whether Cole's death reasonably could be anticipated by an ordinarily prudent person as likely to result based upon the facts and circumstances of this case.

Here, defendant picked up Cole outside a tavern and later assisted in forcing Cole at gunpoint into Swank's basement, from which screams were later heard for several hours. Because a deadly weapon was used to forcibly usher Cole into Swank's basement, we find that a jury reasonably could conclude that Cole's death was a foreseeable consequence of defendant's complicity in Cole's kidnapping at gunpoint. Furthermore, viewing the evidence in its totality, a jury reasonably could infer that the screams that came from the basement for several hours were those of Cole and that it was Cole's blood that

16

Gordon asked Coleman and Barrowman to clean up. Viewing the evidence in its totality, a jury could conclude beyond a reasonable doubt that defendant was complicit in setting forth a chain of events for which Cole's death was a foreseeable consequence, which was known to be, or should have been known to be, within the scope of the risk created by defendant's conduct.

Therefore, defendant's contentions that the evidence was insufficient to establish that his acts were the proximate cause of Cole's death and that his convictions for involuntary manslaughter were against the manifest weight of the evidence are not persuasive. Viewing the evidence in its totality, we find a jury could find beyond a reasonable doubt that defendant caused Cole's death as a proximate result of defendant's complicity in committing or attempting to commit a felony in violation of former R.C. 2903.04. Furthermore, we find defendant's convictions for involuntary manslaughter were supported by legally sufficient evidence and were not against the manifest weight of the evidence.

Accordingly, defendant's first and second assignments of error are overruled.

Exhibit K to Return of Writ.

Petitioner's federal habeas corpus petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy,* 521 U.S. 320, 336 (1997); *Harpster v. Ohio,* 128 F.3d 322, 326 (6th Cir.1997). Under 28 U.S.C. §2254(e)(1), the state court's factual findings are entitled to a presumption of correctness:

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

*Id.* Additionally, the state court's decision is binding on this Court unless that decision is contrary to or involves an unreasonable application of clearly established federal law as determined by the

17

United States Supreme Court:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d).

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Petitioner has failed to meet this standard here.

Before a criminal defendant can be convicted consistent with the United States Constitution, there must be sufficient evidence to justify a reasonable trier of fact to find guilt beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). To determine whether the evidence was sufficient to support a conviction, this Court must view the evidence in the light most favorable to the prosecution.  *Wright v. West*, 505 U.S. 277, 296 (1992)(citing *Jackson,* at 319).  The prosecution is not affirmatively required to "rule out every hypothesis except that of guilt."  *Id.* (quoting *Jackson*, at 326).  "[A] reviewing court 'faced with a record of historical facts that supports

18

conflicting inferences must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Id.* (quoting *Jackson*, at 326). For example the trier of fact is entitled to disbelieve a defendant's uncorroborated and confused testimony, and even to discount a defendant's credibility on account of a prior felony conviction. *Id.*

Petitioner contends that there was no evidence linking him to the acts of the co-defendants Swank and Gordon, and no evidence establishing that co-defendants killed Cole. Further, according to petitioner, the evidence was insufficient to establish that Swank and Gordon accepted petitioner's offer to break Cole's legs or that petitioner aided and abetted in having Cole shot in the head with a gun. In support of these arguments, petitioner refers to cases wherein other courts have concluded that the evidence was insufficient to sustain a conviction; however, these cases are not analogous here. Upon review of the record, petitioner's arguments are not persuasive.

The record reflects sufficient evidence tying petitioner to the crime, and identifying Cole as the person who was forced into Swank's basement with a gun, killed, and dumped in the trash bin outside the home. Numerous witnesses described petitioner as a large white male. *See, e.g., Transcript,* at 100; 208, which matched the description of the unidentified man who accompanied Swank, Gordon, and Payne on the night in question. Richard Stolzenburg confirmed that Cole stole from petitioner. Stolzenburg last saw Cole outside of the Friendly Tavern the day before Cole was killed, getting into the car with petitioner, who appeared angry. *Id.*, at 100-106. Chastity Wiseman was present when Swank and Gordon accepted petitioner's offer of $500.00 to whomever would "teach Danny a lesson" and break his legs. *Id.*, at 206.

He had come over. He was talking about that he had a friend named

19

> Danny, a boyfriend.  That they had gotten into an argument and he
> had stolen a gun, and he basically wanted the gun back, and he was
> willing to pay money to whoever, you know, would agree to do it, to
> get his gun back and teach Danny a lesson.

*Id.*  William Stierhoff corroborated Wiseman's testimony.  *Id.*, at 233.  Stierhoff recounted a later

conversation between Swank and petitioner:

> Joe is mad, he hasn't got his gun back, he's not got his money back.
> He wants, you know, what's going – how're we going to do this,
> what's going to happen, whatever.  That's when I just told him I
> didn't want nothing to do with it.  I don't want to even hear about it.
> Backed out of the room.  That was it.  The doors went closed.  I don't
> know what happened in there.

*Id.*, at 236.  Krista Stumbaugh also stated that Cole used to steal from petitioner.  She described a

prior incident, *see infra, claim two*, wherein petitioner chased Cole into her house with a gun, and

threatened to shoot Cole in the head and dump him into the trash.  *See Transcript, Deposition*.

Cole's body was found in the trash in the area of the Heyl Avenue house not long after Cole was last

seen alive, and the incident in the Heyl home described by Dawn Barrowman and Wiseman took

place.  For the reasons discussed by the state appellate court, this Court likewise concludes that,

viewing all of the evidence in the light most favorable to the prosecution, *see Jackson, supra*, the

evidence was constitutionally sufficient to sustain petitioner's conviction.

Claim one is without merit.

## V.  CLAIM TWO

In claim two, petitioner asserts that he was denied a fair trial due to admission of prior bad

acts evidence and photographs of the victim against him.[1]  Specifically, petitioner complains that Chastity Wiseman stated that she knew petitioner through Aaron Swank "just from being there with [Aaron], you know.  Just – [petitioner] would come and get drugs from Aaron." *Transcript,* at 205. Also, petitioner complains that Krista Stumbaugh, Cole's former girlfriend and mother of Cole's child, was permitted to testify about an incident that took place approximately one month before Cole was killed, wherein petitioner and "Tony" chased Cole and Richard Stolzenburg up the stairs of her home with a gun.  Stumbaugh said:

> [W]hen they came back down Daniel had a bloody nose and... that's when Joe told him that if he ever stole off of him again he would shoot him in the back of the head after they beat him up and throw him in the trash bag and throw him in the trash where he belonged.

*Deposition Transcript,* at 12.    The state appellate court denied this claim as follows:

> Defendant's third assignment of error asserts the trial court erred when it admitted into evidence "other acts" evidence.

> "It is axiomatic that a determination as to the admissibility of evidence is a matter within the sound discretion of the trial court." *Columbus v. Taylor* (1988), 39 Ohio St.3d 162, 164, 529 N.E.2d 1382, rehearing denied, 40 Ohio St.3d 707, 534 N.E.2d 850; see, also, *State v. Sage* (1987), 31 Ohio St.3d 173, 510 N.E.2d 343, paragraph two of the syllabus. "The issue of whether testimony is relevant or irrelevant, confusing or misleading, is best decided by the trial judge who is in a significantly better position to analyze the impact of the evidence on the jury." *Taylor,* at 164, 529 N.E.2d 1382. Accordingly, our inquiry is confined to determining whether the trial court acted unreasonably, arbitrarily, or unconscionably, thereby resulting in material prejudice to defendant. *State v. Noling,* 98 Ohio St.3d 44, 781 N.E.2d 88, 2002-Ohio-7044, at ¶ 43, *certiorari denied* (2003), 539 U.S. 907, 123 S.Ct. 2256, 156 L.Ed.2d 118.

---

[1]  The record has been expanded to include a copy of the photographs referred to by petitioner.  *See* Doc. No. 27.

In *State v. Wilkinson* (1980), 64 Ohio St.2d 308, 314, 415 N.E.2d 261, the Supreme Court of Ohio held:

It is a well established rule that in a criminal trial evidence of previous or subsequent criminal acts, wholly independent of the offense for which a defendant is on trial is inadmissible. * * * Evidence of other acts is not admissible simply because such proof demonstrates a trait, disposition, or propensity toward the commission of a certain type of crime.

Evid.R. 404(B) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In *State v. Smith* (1990), 49 Ohio St.3d 137, 551 N.E.2d 190, the Supreme Court of Ohio explained:

Evid.R. 404(B) is essentially an extension of Evid.R. 404(A) which is intended to preclude a prejudicial attack on a defendant's character. Generally, extrinsic acts may not be used to prove the inference that the accused acted in conformity with his other acts or that he has a propensity to act in such a manner. However, Evid.R. 404(B) permits "other acts" evidence for "other purposes" including but not limited to certain enumerated issues. * * *

*Id.* at 140, 551 N.E.2d 190. See, also, *State v. Rocker* (Sept. 1, 1998), Franklin App. No. 97APA10-1341, dismissed, appeal not allowed, 84 Ohio St.3d 1448, 703 N.E.2d 327, citing *Smith,* supra (observing that "[t]he listed exceptions within Evid.R. 404(B) are not exclusive, and 'other acts' evidence not fitting within the enumerated categories may be admissible so long as the evidence is admitted for any proper purpose other than proving the defendant's propensity to act and conformity with a particular trait of his character").

Comparatively, R.C. 2945.59 provides:
In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in

doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.

Under R.C. 2945.59, "evidence of other acts is admissible if the evidence tends to prove a specific element of the crime charged or one of the matters specifically enumerated in the statute." *Smith,* at 139-140.

In *State v. Broom* (1988), 40 Ohio St.3d 277, 533 N.E.2d 682, paragraph one of the syllabus, *certiorari denied* (1989), 490 U.S. 1075, 109 S.Ct. 2089, 104 L.Ed.2d 653, the Supreme Court of Ohio stated:

Because R.C. 2945.59 and Evid. R. 404(B) codify an exception to the common law with respect to evidence of other acts of wrongdoing, they must be construed against admissibility, and the standard for determining admissibility of such evidence is strict. * * * The rule and the statute contemplate acts which may or may not be similar to the crime at issue. If the other act does in fact 'tend to show' by substantial proof any of those things enumerated, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident, then evidence of the other act may be admissible. * * *

Our task upon appellate review "is to determine the probative value of the evidence adduced, and whether it was admissible to prove any of the elements mentioned in R.C. 2945.59 and Evid.R. 404(B)." *Smith,* at 140.

Here, defendant asserts the trial court erred when it permitted testimony about defendant's search for Cole at Cole's sister's house, wherein he charged into Cole's sister's house with a gun drawn, chased Cole upstairs after Cole had stolen items from him, and threatened to shoot Cole in the back of the head and throw him in the trash if he stole from defendant again.
Based upon our review, we cannot conclude that the trial court acted unreasonably, arbitrarily, or unconscionably. Whether defendant was the "heavy-set white guy" at Swank's house on or around April 30, 1997, was at issue, and therefore the trial court's admission of this evidence was relevant and probative to determine identity. Additionally, this "other acts" evidence was relevant to a determination of defendant's motive. *See, generally*, Evid.R. 401

23

(defining "relevant evidence"). We therefore conclude that the "other acts" evidence tended to show by substantial proof items enumerated in Evid.R. 404(B) and R.C. 2945.59.

Nevertheless, although this evidence was relevant and probative, Evid.R. 403(A) provides that relevant evidence is inadmissible "if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."

While it is indisputable that the "other acts" evidence was unfavorable to defendant's case, "the decision to exclude evidence under Evid.R. 403(A) involves more than a determination of whether the evidence is merely prejudicial or unfavorable." *State v. Bowman* (2001), 144 Ohio App.3d 179, 185, 759 N.E.2d 856. Rather than being merely prejudicial or unfavorable, "[t]he evidence must cause *unfair* prejudice, for if the term 'unfair prejudice' simply meant prejudicial or unfavorable, anything adverse to a litigant's case would be excluded under Evid.R. 403." *Id.* (Emphasis sic.) Based upon our review, we cannot conclude that the trial court's admission of "other acts" evidence resulted in *unfair* prejudice.

Accordingly, we overrule defendant's third assignment of error.

Defendant's fourth assignment of error asserts the trial court erred when, over defense objections, it admitted photographs into evidence that were purportedly prejudicial and inflammatory.

"When considering the admissibility of photographic evidence under Evid.R. 403, the question is whether the probative value of the photographic evidence is substantially outweighed by the danger of unfair prejudice to the defendant. * * * The admission or exclusion of such photographic evidence is left to the discretion of the trial court." *State v. Morales* (1987), 32 Ohio St.3d 252, 257, 513 N.E.2d 267, *certiorari denied* (1988), 484 U.S. 1047, 108 S.Ct. 785, 98 L.Ed.2d 871. "A trial court abuses its discretion when it acts in an unreasonable, arbitrary or unconscionable manner. A reviewing court should not substitute its judgment for that of the trial court." *State v. Finnerty* (1989), 45 Ohio St.3d 104, 107, 543 N.E.2d 1233.

According to *Morales,* "a trial court may reject an otherwise admissible photograph which, because of its inflammatory nature, creates a danger of prejudicial impact that substantially outweighs the probative value of the photograph as evidence. Absent such danger, the photograph is admissible." Id. at 257, 513 N.E.2d 267. Cf. *State*

*v. Maurer* (1984), 15 Ohio St.3d 239, 473 N.E.2d 768, paragraph seven of the syllabus, *certiorari denied* (1985), 472 U.S. 1012, 105 S.Ct. 2714, 86 L.Ed.2d 728, *rehearing denied* (1985), 473 U.S. 924, 106 S.Ct. 15, 87 L.Ed.2d 694 (providing a stricter evidentiary standard for the introduction of photographs in capital cases).

Here, some of the photographs that were entered into evidence were admittedly gruesome. However, "the mere fact that a photograph is gruesome or horrendous is not sufficient to render it *per se* inadmissible." *Maurer,* at 265, 473 N.E.2d 768. The photographs in this case show the scene where Cole's body was discovered, his body before and during the coroner's examination, and his wounds. These photographs were probative with regard to showing Cole's injuries. Based upon our review, we conclude the admission of the photographs did not create a danger of prejudicial impact that substantially outweighed the probative evidentiary value of the photographs.

Accordingly, defendant's fourth assignment of error is overruled.

Exhibit K to Return of Writ.  Again, the decision of the state appellate court is presumed to be correct.  28 U.S.C. §2254(d), (e).  Petitioner has failed to establish that the decision of the state appellate court is unreasonable as to justify federal habeas corpus relief.  *See Williams v. Taylor*, *supra.*

Federal habeas review of state court evidentiary rulings is extremely limited.  *Waters v. Kassulke,* 916 F.2d 329, 335 (6th Cir. 1990).  Evidentiary questions generally do not rise to a constitutional level unless the error was so prejudicial as to deprive a defendant of a fundamentally fair trial, thereby violating due process.  *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *see also Walker v. Engle,* 703 F.2d 959, 962 (6th Cir. 1983), *cert. denied*, 464 U.S. 962 (1983).  When such errors are alleged, the federal court's inquiry in reviewing these claims is directed to whether the evidence was rationally connected to the crime charged.  *Carter v. Jago*, 637 F.2d 449, 457 (6th Cir. 1980), *cert. denied*, 456 U.S. 980 (1982).

The record simply fails to reflect that admission of any of the complained of evidence deprived petitioner of a constitutionally fair trial.

> The government cannot... in its case-in-chief, introduce evidence of Appellant's unsavory character merely to show that he is a bad person and thus more likely to have committed the crime.

*United States v. Roark*, 924 F.2d 1426, 1434 (8th Cir. 1991).  However, as noted by the state appellate court, Cole and Stumbaugh's description of the prior incident  was relevant to establish petitioner's intent and motive to commit the crime, as well as his identity as the large white man who was with Michael Gordon and Aaron Swank when they forced Cole into the basement of the house on Heyl Avenue in April 1997.

> Both the Supreme Court and the Sixth Circuit have repeatedly held that a defendant is not denied a fair trial by the admission of prior bad acts evidence which is relevant in the defendant's trial. *See Estelle,* 502 U.S. at 69-70; *Dowling v. United States,* 493 U.S. 342, 353-54 (1990); *Coleman v. Mitchell,* 268 F.3d 417, 439-40 (6th Cir.2001); *Pennington v. Lazaroff,* 13 Fed. Appx. 228, 232 (6th Cir.2001) (per curiam) (unpublished); *Manning v. Rose,* 507 F.2d 889, 893-95 (6th Cir.1974).

*Norris v. Davis*, unreported, 2006 WL 1581410 (E.D. Michigan May 3, 2006).

The state appellate court did not specifically address petitioner's claim that he was denied a fair trial by Wiseman's brief statement that she knew petitioner because he had obtained drugs from Swank.  Arguably, therefore, this Court conducts a *de novo*, or intermediate review of this claim.  *See Socha v. Wilson*, 477 F.Supp.2d 809, 819 (N.D. Ohio February 21, 2007)(citations omitted).  Regardless, however, of which standard of review is applied, the outcome remains the same.   Admission of Wiseman's statement was not so prejudicial as to constitute error of constitutional magnitude.  The photographs of Cole were rationally connected to the crimes charged.

*See Carter v. Jago*, *supra.*  Moreover,

> [t]here is no clearly established Supreme Court precedent which
> holds that a state violates due process by permitting propensity
> evidence in the form of other bad acts evidence. In *Estelle v.
> McGuire*, the Supreme Court declined to hold that the admission of
> prior injury evidence violated due process, thus warranting habeas
> relief. 502 U.S. 62, 75, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). The
> Court stated in a footnote that, because it need not reach the issue, it
> expressed no opinion as to whether a state law would violate due
> process if it permitted the use of prior crimes evidence to show
> propensity to commit a charged crime. *Id.* at 75 n. 5, 112 S.Ct. 475.
> Moreover, in *Spencer v. Texas,* 385 U.S. 554, 87 S.Ct. 648, 17
> L.Ed.2d 606 (1967), the Supreme Court rejected the argument that
> the Due Process Clause requires the exclusion of prejudicial
> evidence, even though limiting instructions were given and a valid
> state purpose is served. *Id.* at 563-64, 87 S.Ct. 648. The Court
> recognized that it was not "a rule-making organ for the promulgation
> of state rules of criminal procedure. And none of the specific
> provisions of the Constitution ordains this Court with such authority."
> *Id.* at 564, 87 S.Ct. 648. While the Supreme Court has addressed
> whether prior acts testimony is permissible under the Federal Rules
> of Evidence, *see Old Chief v. United States,* 519 U.S. 172, 117 S.Ct.
> 644, 136 L.Ed.2d 574 (1997); *Huddleston v. United States,* 485 U.S.
> 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988), it has not explicitly
> addressed the issue in constitutional terms. Accordingly, the district
> court correctly found that there is no Supreme Court precedent that
> the trial court's decision could be deemed "contrary to," under
> AEDPA.

*Bugh v. Mitchell*, 329 F.3d 469, 512-13 (6th Cir. 2003).

# VI.  CLAIM THREE

In claim three, petitioner asserts that he was denied a fair trial due to erroneous jury

instructions on the law of complicity.  The state appellate court rejected this claim as follows:

> Defendant's fifth assignment of error asserts the trial court, over
> defendant's objection, improperly instructed the jury about the law of

27

complicity.

"A jury charge must be considered as a whole and a reviewing court must determine whether the jury charge probably misled the jury in a matter materially affecting the complaining party's substantial rights." *Becker v. Lake Cty. Mem. Hosp. West* (1990), 53 Ohio St.3d 202, 208, 560 N.E.2d 165, see, also, *State v. Price* (1979), 60 Ohio St.2d 136, 398 N.E.2d 772, paragraph four of the syllabus, certiorari denied (1980), 446 U.S. 943, 100 S.Ct. 2169, 64 L.Ed.2d 798; *State v. Hardy* (1971), 28 Ohio St.2d 89, 92, 276 N.E.2d 247.

Defendant asserts the trial court erred when it instructed:

A common purpose among two or more people to commit a crime need not be shown by positive evidence, but it may be inferred from circumstances surrounding the act and from the defendant's subsequent conduct. Criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed. In addition, mere presence can be enough if it is intended to and does aid the primary offender.

(Tr. Vol. IV, at 631; Jury Instructions, at 12.)

Defendant contends the trial court failed to properly instruct the jury about the requisite criminal intent to support a conviction of complicity, and the trial court's instruction concerning "positive evidence" was confusing, misleading, and incorrect.

In addition to the above instruction, the trial court earlier instructed the jury as follows:

Before you can find the defendant guilty of a crime or specification as a complicitor or aider and abettor, you must find beyond a reasonable doubt that on or about the 29th day of April 1997 through the 30th day of April 1997, in Franklin County, Ohio, the defendant solicited or procured another to commit the offense or aided or abetted another in committing the offense with the same knowledge or purpose as required by the offense under consideration.

*11 (Tr. Vol. IV, at 630; Jury Instructions, at 12.)

The trial court also earlier provided this jury instruction:

Evidence may be direct or circumstantial, or both. Direct evidence is

28

the testimony given by a witness who has seen or heard the facts to which he or she testifies. * * * Circumstantial evidence is proof of facts or circumstances by direct evidence from which you may reasonably infer other related or connected facts which naturally and logically follow, according to the common experience of mankind. * * * Direct and circumstantial evidence are of equal weight. * * *

(Tr. Vol. IV, at 612-613; Jury Instructions, at 2.)

After reviewing the jury charge as a whole, we cannot conclude the trial court's instruction concerning "positive evidence" probably misled the jury in a manner affecting defendant's substantial rights or that the trial court improperly instructed the jury about the requisite culpability to find defendant complicit in the crimes for which he was charged. *See* R.C. 2923.03 (complicity); Black's Law Dictionary (8 Ed.2004) 596 (observing that "direct evidence" may also be termed "positive evidence"); *State v. Wilson* (App.1946), 47 Ohio Law Abs. 636, 639, 70 N.E.2d 658 (observing that "[i]t is immaterial whether the court characterized the evidence which it described as direct or positive inasmuch as he properly defined the elements thereof. * * * [T]hese two types of evidence are frequently referred to as identical and we find no prejudicial error whatsoever in the language employed in the charge").

Defendant's fifth assignment of error is therefore overruled.

Exhibit K to Return of Writ.

Errors in jury instructions are generally not cognizable in federal habeas corpus unless they deprive petitioner of a fundamentally fair trial. *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *see also Wood v. Marshall*, 790 F.2d 548, 551-52 (6th Cir. 1986); *Thomas v. Arn*, 704 F.2d 865, 868-69 (6th Cir. 1983). A habeas petitioner challenging jury instructions must establish that "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147 (1973). An omission or an incomplete instruction is less likely to be prejudicial than a misstatement of law. *Henderson,* 431 U.S. at 155.

Viewing the jury instructions as a whole, the Court concludes that petitioner cannot meet this

29

standard here.  Claim three is without merit.

## VII.  CLAIM FOUR

In claim four, petitioner asserts that he was denied his right to compulsory process because the trial judge refused to order that defense witnesses be transferred from prison to testify at petitioner's trial.  The state appellate court rejected this claim as follows:

> Defendant's sixth assignment of error asserts the trial court erred: (1) when it refused to order the return of imprisoned co-defendants to Franklin County so that these co-defendants could testify on defendant's behalf, and (2) when it failed to admit into evidence a letter that was written by Michael Gordon.

> Pursuant to the Sixth Amendment to the United States Constitution and Section 10, Article 1 of the Ohio Constitution, an accused has a right to compulsory process to obtain favorable witnesses or evidence. *State v. Blankenship* (1995), 102 Ohio App.3d 534, 550, 657 N.E.2d 559, dismissed, appeal not allowed, 73 Ohio St.3d 1426, 652 N.E.2d 799, citing *Pennsylvania v. Ritchie* (1987), 480 U.S. 39, 56, 107 S.Ct. 989, 94 L.Ed.2d 40; *Columbus v. Cooper* (1990), 49 Ohio St.3d 42, 44, 550 N.E.2d 937. See, also, *Washington v. Texas* (1967), 388 U.S. 14, 19, 87 S.Ct. 1920, 18 L.Ed.2d 1019.

> Here, defendant subpoenaed Aaron Swank to testify at trial. However, although defendant subpoenaed Swank, at trial defendant did not call Swank to testify on his behalf. Having failed to call Swank as a witness on behalf of defendant, defendant's contention that the trial court erred by refusing to order the return of the imprisoned Swank to testify is therefore unconvincing.

> Defendant's contention that the trial court erred by refusing to order the return of the imprisoned Michael Gordon to testify on defendant's behalf is also unconvincing. At trial, defense counsel informed the court:

> Michael Gordon, if the court recalls, is a federal prisoner. As of our pretrial hearing he was in federal prison in Atlanta. He's now actually been moved, I understand to Pennsylvania, but he's still a federal prisoner.

> We have not sought to bring him back partly because I don't think that effort would have been successful. But more importantly, I've talked to his attorney who is handling his appeal of his convictions in

> the related case to this, the Daniel Cole homicide. Mr. Gordon did not
> testify at his trial. He has an appeal pending and expects to get a
> retrial or is hopeful of that. He retains his Fifth Amendment rights. If
> he were here, he would decline to testify anyway. So I saw no
> purpose in expending an effort to try and get someone back who
> wasn't going to testify.
>
> (Tr. Vol. IV, at 495-496.)
>
> Because defense counsel believed Gordon would assert his Fifth
> Amendment right against self-incrimination, as a matter of trial
> strategy, defense counsel declined to call Michael Gordon as a
> witness on behalf of defendant. Defendant's assertion that the trial
> court erred when it failed to order the return of the imprisoned
> Gordon is therefore not persuasive. *See, also*, *State v. Kirk* (1995), 72
> Ohio St.3d 564, 651 N.E.2d 981, paragraph one of the syllabus,
> distinguishing and limiting, *Cooper, supra.*

Exhibit K to Return of Writ. Again, the decision and factual findings of the state appellate court

are presumed to be correct. Notwithstanding petitioner's arguments that Swank and Gordon would

have provided exculpatory evidence, had they testified at trial on his behalf, petitioner has failed to

rebut the factual finding of the state appellate court that trial counsel exercised a strategic decision

not to call Gordon as a defense witness. Additionally, as also noted by the state appellate court, the

record fails to reflect that defense counsel attempted to call Swank as a defense witness, despite

issuing a subpoena for Swank's presence at trial. *See* Supplemental Exhibit A. In view of the

foregoing, petitioner simply has failed to establish that federal habeas corpus relief is warranted.

*See Williams v. Taylor, supra.*

> Claim four is without merit.

## VIII.

For all of the foregoing reasons, the Magistrate Judge **RECOMMENDS** that this action be

**DISMISSED.**

If any party objects to this *Report and Recommendation*, that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation*.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge